**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARY TALCOTT** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:19-2195** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **BARR-NUNN TRANSPORTATION, INC.** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM

On December 23, 2019, plaintiff Gary Talcott, ("Plaintiff" or "Talcott"), filed a complaint in this District, (Doc. 1), asserting claims under the Americans with Disabilities Act, ("ADA"), and the Pennsylvania Human Relations Act, ("PHRA") for disability discrimination, retaliation, and failure to accommodate. Plaintiff thereafter amended his complaint against Barr-Nunn several times, ending with the Plaintiff's third amended complaint. (Doc. 35).

Pending before the Court are two separate motions for summary judgment filed by the Plaintiff and Defendant who each seek judgment in their favor as to the Plaintiff's claims for failure on the part of the Defendant to accommodate Plaintiff's disability. The Defendant further seeks summary judgment as to the remainder of the Plaintiff's claims under the ADA and PHRA. Viewing the evidence in a light most favorable to the non-moving party, the Court will **DENY** the Defendant's motion for summary judgment as

to the Plaintiff's claims under the ADA and PHRA.[1] The Plaintiff's motion for partial summary judgment as to his ADA claims will likewise be **DENIED**.

## I.    BACKGROUND

Plaintiff was initially employed by Defendant as an over-the-road truck driver from May 2013 to October 2018. Drivers in this position were to meet certain requirements including, but not exclusively, obtaining a medical card from a DOT certified physician, passing an agility lifting test, and passing a drug test. During this period, however, Plaintiff suffered from several health issues, including high blood pressure, bronchitis, and diabetes.

During this first period of employment from 2013 to 2018, Plaintiff qualified for and received all of his available medical leave under the FMLA before he voluntary resigned in October 2018. *See* (Doc. 38-2 at 17) (testimony of Plaintiff where he confirms he sent Defendant a message in which he states "[h]ave to quit as of 10/18/18. Don't know how long I'm going to be out. I'm going [to] have to [do] something else. My driving days are over for now"). After he reapplied to and was rehired by the Defendant in February 2019, however, Plaintiff did not initially qualify for protections under the FMLA and was instead limited to the coverage provided under the Defendant's first year medical leave ("FYML") policy. The Defendant's FYML policy was

---

[1] The Plaintiff's interference and retaliation claims under the FMLA were dismissed by stipulation of the parties and entered by the Court on February 19, 2021. (Doc. 34).

structured to provide up to fourteen days of leave to employees in instances where the employee was ineligible to receive leave under the FMLA, particularly in the first year of the employee's work with the company. In accordance with this FYML policy, Defendant provided Plaintiff sixteen days of medical leave for the period between April 27, 2019, to May 13, 2019, which exceeded the fourteen-day leave provided under the policy. *See also* (Doc. 38-2 at 26) (Plaintiff retained position even though he required extra days of medical leave).

Plaintiff thereafter needed additional leave starting on September 23, 2019, due to further illness. At this juncture, Plaintiff was still not eligible for FMLA leave as he had only worked 1,222 hours in the twelve-month period directly proceeding this request for leave. Nevertheless, Plaintiff, who claims that he continued to provide updates to the Defendant regarding his condition, was provided leave and informed the Defendant that he would return to work on October 1, 2019. Plaintiff was notified by the Defendant that as he had run out of medical leave, he must provide a letter from his doctor confirming that he was able to return on that date and that he would need "to be ready to work or [human resources] will enter the vol[untary] resignation." *See also* (Doc. 38-13) (email stating that Plaintiff had informed the Defendant that he "would be ready to roll at 11:00 on Tuesday 10/1/2019," though "he would have to stay out and run to cover the days off that weren't earned time off, PTO or medical leave").

On the day of his prospective return, however, Plaintiff informed the Defendant that he had lost consciousness when attempting to accept a load for his truck and was instead forced to go to the hospital. Specifically, the Plaintiff claimed that he "started [his] truck and accepted [his] load and went back to [his] brothers and passed out," after which the Plaintiff's brother took the Plaintiff to the hospital where his doctors "did chest/lung x-rays but dr. can't see [Plaintiff] until tomorrow at 12:45" even though the Plaintiff had "fluid in [his] freaking lungs." *See* (Doc. 38-14). The Defendant claims it made efforts to contact the Plaintiff but was unsuccessful. The following day, on October 2, 2019, the Plaintiff once again called the Defendant and reiterated that he would be unable to return to work as he had "passed out" and the doctors were "trying to figure out" the problem. *See also* (Doc. 38-16) (Plaintiff claimed that he "lost consciousness and fell on his Blazer when he was going back for his phone," but his doctors "can[']t tell what is wrong with him"). At this point, as Plaintiff had run out of medical leave and it was unclear when he would be able to return, a "voluntarily resignation" was again entered by the Defendant.

Following his second "voluntary resignation", Plaintiff claims he took steps to recertify that he was physically fit for work, including providing a note by his doctor that indicated he could return to work as of October 4, 2019, two days after his "voluntary resignation" was entered.[2] The Plaintiff was

---

[2] The Defendant contends that this letter was backdated from November 2019 to indicate that Plaintiff was physically able to perform his

eventually able to regain his certification as a qualified driver pursuant to DOT regulations, but he was not again rehired after his second "voluntary resignation".[3]

## II.    STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp.

---

duties as of October 4, 2019, though it is uncontested that the Plaintiff had previously exhausted his medical leave under the Defendant's FYML policy and that he did not qualify for further leave under the FMLA.

[3] Defendant argues that the Unemployment Hearing Transcript cited numerous times in the Plaintiff's statement of material facts "must be excluded from this matter in its entirety, and disregarded by the Court as it is outside of the record of the case" as "Plaintiff still has not produced [his Unemployment Hearing Transcript] to Barr-Nunn, opting instead to excerpt the version he attached to his SOMF." (Doc. 39 at 2 n.1). The Plaintiff, in contrast, contends that the transcript was created from an audio recording provided to the Defendant and that the Defendant failed to raise any objections or file any motions regarding the production of a full transcript prior to this point. Nevertheless, though a failure to object to either the introduction of or failure to produce such a document undermines arguments against admissibility, the facts alleged within the Plaintiff's statements of material fact are not dispositive for purposes of the Plaintiff's motion for summary judgment. Any further objections to the admissibility of or failure to produce responsive documents must instead be addressed through other means. *See* Fed. R. Civ. P. 37.

v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp.836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not … to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); *see also* Celotex Corp., 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle

v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). If, however, the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-LaRoche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## III.   DISCUSSION

The Americans with Disabilities Act prohibits employers from discriminating based upon the known physical or mental impairments of "a qualified individual with a disability." 42 U.S.C. §12112. A plaintiff presents a *prima facie* case of discrimination under the ADA  that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination [and because of his disability]." Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999) (citing Gaul v. Lucent Tech., Inc., 134 F.3d 576, 580 (3d Cir. 1998)). As the parties assert, "the same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA." Colwell

v. Rite Aid Corp., 602 F.3d 495, 499 n.3 (3d Cir. 2010); *see also* Taylor, 184 F.3d at 306 ("analysis of an ADA claim applies equally to a PHRA claim").

"Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." Taylor,184 F.3d at 306. An employer is thus liable for a discrimination claim under the ADA when the employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. §12112(b)(5)(A). To support this claim:

> First, the plaintiff bears the burden of proving that she is otherwise qualified; if an accommodation is needed, the plaintiff must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified. On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits. These two requirements placed on the plaintiff will permit district courts to grant summary judgments for defendants in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly.

Walton v. Mental Health Ass'n of Southeastern Pennsylvania, 168 F.3d 661, 670 (3d Cir. 1999) (citing Borkowski v. Valley Cent. Sch. Dist. 63 F.3d 131 136-37 (2d Cir. 1995)). "Following a *prima facie* showing by the plaintiff that a reasonable accommodation exists which would make her qualified, the

burden shifts to the defendant to prove either that the accommodation is unreasonable or that it creates an undue hardship for the defendant." Id.; *see also* Turner v. Hershey Chocolate USA, 440 F.3d 604, 614 (3d Cir. 2006) ("undue hardship" is not required for a *prima facie* case, but instead is an affirmative defense).

The Defendant does not challenge, for purposes of the Plaintiff's motion for summary judgment, that the Plaintiff had a disability, that Plaintiff notified Defendant that he had a disability, or that Plaintiff requested an accommodation for his disability. (Doc. 39 at 6-7). Defendant also admits for purposes of the Plaintiff's motion that Plaintiff's diabetes and bronchitis were qualified disabilities under the ADA. (Id. at 7 n.5). Therefore, for the Plaintiff and Defendant's motions for summary judgment, all that remains in contention in accordance with the three elements of a *prima facie* ADA discrimination claim is whether the Plaintiff was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations by the employer, and whether he suffered an adverse employment decision as a result of discrimination. *See* Skerski v. Time Warner Cable Co., 257 F.3d 273, 284 (3d Cir. 2001) ("A disabled employee may establish a *prima facie* case under the ADA if she shows that she can perform the essential function of the job with reasonable accommodation and that the employer refused to make such an accommodation."). The Plaintiff also argues that the Defendant failed to engage in sufficient process when denying an accommodation. The Court will address these issues in turn.

A. Whether the Plaintiff Was a Qualified Individual with a Disability

Courts have set forth a two-part test to determine whether an employee is a "qualified individual with a disability" for an ADA discrimination claim. A court must first consider whether the individual meets the prerequisites to be otherwise qualified to perform the duties of the position. Gaul, 134 F.3d at 580 (citing 29 C.F.R. §1630, App. at 353). Second, the court must consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." Id. "The determination of whether an individual with a disability is qualified is made at the time of the employment decision." Id. (citing 29 C.F.R. §1630, App. at 353-54).

a. Whether Plaintiff was otherwise qualified to perform the essential functions of the job

"To have a successful *prima facie* case of disability discrimination, retaliation, or failure to accommodate under the ADA, Plaintiff must establish that [he] is a 'qualified individual.'" Weiss v. PA Hosp. of Univ. of PA, 2021 WL 780307, *6 (E.D. Pa. Feb. 26, 2021). Under the ADA, a "qualified individual" is an employee "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). To meet this requirement, a plaintiff must first demonstrate that he or she "satisfies the requisite skill, experience, education and other job-related requirements of the employment

position that such individual holds or desires." <u>Deane v. Pocono Med. Ctr.,</u> <u>142 F.3d 138, 145 (3d Cir. 1998)</u>.

Throughout the parties' briefing, it is generally accepted that the Plaintiff suffered from diabetes and high blood pressure. To maintain employment, however, Plaintiff was required to, amongst other steps, obtain a medical card from a DOT certified physician verifying his health, pass an agility lifting test, and pass a drug test. Yet even with these requirements and his medical issues, Plaintiff was able to obtain and maintain employment with the Defendant for over five years before a voluntarily resignation was entered in October 2018. Thereafter, Plaintiff claims that he resubmitted a new DOT medical card in February 2019 that confirmed he was medically qualified to serve as a driver, which allowed him to return to work. The question therefore is whether Plaintiff was able to satisfy the job-related requirements at the time of the alleged adverse employment decision once his unidentified medical issues arose.

The Defendant does not contend that the Plaintiff did not possess the requisite skills, experience, or education prior to the Plaintiff's "voluntary resignation". Instead, the only change that may have affected the Plaintiff's qualifications for employment as an over-the-road driver would have been the change in his physical condition. As such, the Defendant argues, specifically as it relates to the Plaintiff's claim for disability discrimination, that the Plaintiff, due to his unconsciousness, was no longer qualified to perform his duties as a driver as "he could not operate a commercial motor vehicle

under the Federal Motor Carrier Safety Regulations, 49 C.F.R. §§350.101, et seq., ('FMCSR') which expressly disqualified him from performing the essential functions of his job as an over-the-road commercial truck driver." (Doc 37-2 at 12) (citing 49 C.F.R. §391.41(b)(8) ("A person is physically qualified to drive a commercial motor vehicle if that person … [h]as no established medical history or clinical diagnosis of epilepsy or any other condition which is likely to cause loss of consciousness or any loss of ability to control a commercial motor vehicle.")).

In contrast, the Plaintiff argues that his unconsciousness was caused by high blood sugars potentially linked to steroid shots and antibiotics, and that he was "cleared by his doctor to return to work as of October 4, 2019." If such were the case, it is possible that the one instance in which the Plaintiff passed out would not constitute a "condition which is likely to cause loss of consciousness." *See* 49 C.F.R. §391.41(b)(8). Nevertheless, if the Plaintiff had a "medical history or clinical diagnosis of … any other condition" that caused the Plaintiff to lose consciousness, he may no longer be "qualified" for his position. Therefore, even if the Plaintiff was "otherwise qualified to perform his job function" and he "satisfie[d] the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires," Deane, 142 F.3d at 145, questions still remain as to whether Plaintiff's unconsciousness in any way undermined his qualifications to operate a commercial motor vehicle "at the time of the employment decision." Gaul, 134 F.3d at 580.

### b. Whether, with or without a reasonable accommodation, Plaintiff could perform his job

To further satisfy the second element of an ADA claim, that he or she is a "qualified individual," a plaintiff must also show that he or she, "*with or without reasonable accommodation*, can perform the *essential functions* of the position held or sought." Deane, 142 F.3d at 145; Turner, 440 F.3d at 608 (emphasis added). As part of this analysis, courts must "determine whether [the plaintiff] can perform the essential functions of his job without accommodation." Skerski, 257 F.3d at 278. If, however the plaintiff cannot establish that he or she can perform the essential duties of employment without an accommodation, the court must determine "whether he can perform those same functions with a reasonable accommodation." Id.

As a preliminary matter, an "essential function" refers to the "fundamental job duties of the employment position," though this does not include the "marginal" functions of the position. 29 C.F.R. §1630.2(n)(1); *see also* Turner, 440 F.3d at 612 (describing factors used to support a finding that a job function is essential, including "[w]ritten job descriptions" or the "amount of time spent on the job performing the function"). A function is essential if "the reason the position exists is to perform that function." 29 C.F.R. §1630.2(n)(2)(i). In this instance, it cannot be argued that the ability of an over-the-road truck driver to operate a truck would not be an essential function of the job. *See* Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 579 (1999) (Thomas, C., concurring) ("[t]he quintessential function of that job

[driving trucks], it seems to me, is to be able to drive a commercial truck in interstate commerce, and it was respondent's burden to prove that he could do so"). The ability of an employee to report to work could likewise be considered an essential function of the position. *See* Miller v. Univ. of Pittsburgh Med. Ctr., 350 F.App'x. 727, 729 (3d Cir. 2009) (holding that "[a]ttendance can constitute an essential function under the ADA" where it is "evident that attendance is an essential element of [the] position"). This Court thus must determine whether the Plaintiff, at the time of his "voluntary resignation", would be able to return to work and operate a commercial truck with or without a reasonable accommodation.

As the accommodation required by the Plaintiff was for medical leave, it must be undisputed that the Plaintiff was unable to operate a vehicle without first obtaining the requested leave. It is therefore left to ascertain whether further medical leave would be considered a reasonable accommodation and whether the Plaintiff could return to work and perform his duties with such an accommodation [4] According to the ADA, a "reasonable accommodation" includes:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of

---

[4] Though the Plaintiff argues that he was cleared to return to work on October 4, 2019, questions of material fact still remain as to whether this is true or whether the Plaintiff was ever to return to work. Questions about the Plaintiff's ability to operate a truck would undermine the ability of this Court to find that the Plaintiff has met his burden, but a full analysis as to whether this is true is unnecessary based on this Court's other findings.

equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. §12111(9)(B). The relevant regulations define reasonable accommodations as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." Skerski, 257 F.3d at 284 (citing 29 C.F.R. §1630.2(o)(1)(ii)).

Though the reasonableness of a party's actions may often be left for a jury, courts have determined whether a proposed accommodation under the ADA was unreasonable as a matter of law. Gaul, 134 F.3d at 581. A leave of absence for medical treatment, in certain circumstances, can be considered a reasonable accommodation for a plaintiff's disability. Garner v. Sch. Dist. of Philadelphia, 63 F.Supp.3d 483, 492 (E.D. Pa. 2014) (citing Dogmanits v. Capital Blue Cross, 413 F.Supp.2d 452, 460-61 (E.D. Pa. 2005)). For a leave of absence to be considered reasonable, however, it must enable the employee to perform his or her essential job functions "in the near future." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004). In comparison, it is well established that a leave of absence for an indefinite duration is not a reasonable accommodation. *See* Fogleman v. Greater Hazleton Health Alliance, 122 F.App'x. 581, 585 (3d

Cir. 2004) (holding that an indefinite or open-ended leave "does not constitute a reasonable accommodation").

The Plaintiff contends that "there is an abundance of factual background evidence that Mr. Talcott was able to perform his job, although he did require a very brief accommodation of leave from work for his blood sugars to level out after receiving antibiotics and a steroid for his bronchitis." (Doc. 42 at 11-12). Through his own account, the Plaintiff had planned to return to work on October 1, 2019, following medical leave, but that after he picked up a load for his truck, he "went back to [his] brothers and passed out," after which his brother took the Plaintiff to the hospital where the doctors could not see him even though the Plaintiff had "fluid in [his] freaking lungs." The following day, on October 2, 2019, the Plaintiff once again was forced to reach out to the Defendant and reiterate that he was unable to return to work as he had "passed out" and the doctors were still trying to "figure out what was going on." Nonetheless, the Plaintiff claims that he "was cleared to return to work full duty by his DOT certified physician as of October 4, 2019," and "[t]herefore, had Mr. Talcott been provided with the accommodation of two additional days of leave until his clearance on October 4, 2019, no reasonable jury could find that he was not qualified for his position." (Id. at 13). Accordingly, to the Plaintiff, an accommodation of only a few more days of medical leave to allow the Plaintiff's doctors to diagnose and treat the Plaintiff's ailments was reasonable and unjustly denied.

In contrast, the Defendant highlights the fact that the Plaintiff's request for leave followed multiple other instances where the Defendant granted the Plaintiff medical leave irrespective of the FMLA or the Defendant's FYML policy. Specifically, in early 2019, the Plaintiff had expended the leave available under the Defendant's FYML policy, but in September 2019 the Plaintiff once again requested medical leave and informed the Defendant that he would not be able to return to work until October 1, 2019. The Defendant once again granted the Plaintiff medical leave. When the Plaintiff, however, called out of work on both October 1, 2019, and October 2, 2019, he failed to provide the Defendant with a clear indication as to when he would be able to return to work, maintain that there was a link between his unconsciousness and any of his disabilities, or suggest that any alternative forms of reasonable accommodation that would "make [him] qualified" for the position existed. *See* Walton, 168 F.3d at 670 (it is the plaintiff's burden to show that a "reasonable accommodation exists which would make [him] qualified"). As a result, it may instead be argued that granting further leave beyond that which was already provided under the Defendant's FYML policy was open-ended or unreasonable.

Nevertheless, this Court finds that it would be best left to a jury to determine whether providing an accommodation of further medical leave, in light of previous accommodations and available information at the time of the Plaintiff's request, was reasonable, and thus whether the Defendant's withholding of such an accommodation supports a claim under the ADA.

17

*Compare* Fogleman, 122 F.App'x. at 586 (plaintiff "did not present evidence from which one could reasonably find that a leave of absence … extending for an unknown period of time, would have enabled her to perform the essential job functions within a reasonable amount of time") *with* Bernhard v. Brown & Brown of Lehigh Valley, Inc., 720 F.Supp.2d 694, 703 (E.D. Pa. 2010) (a request for an extended period of medical leave was reasonable and required an interactive discussion where the employee indicated when he would be able to return to work). Likewise, the sufficiency of the Plaintiff's claims under the Pennsylvania Human Relations Act will also remain in question "since the same standard applies to plaintiff's identical claims under the PHRA" as under the ADA. Provenzano v. RLS Logistics, 2021 WL 1060439, at *15 (M.D. Pa. Mar. 18, 2021).[5]

### B. Whether Plaintiff Suffered an Adverse Employment Decision

The Defendant, in accordance with the third element of an ADA claim, contends that "Plaintiff cannot satisfy his *prima facie* case, as he did not suffer an adverse employment action because he voluntarily resigned." (Doc.

---

[5] "Following a *prima facie* showing by the plaintiff that a reasonable accommodation exists which would make her qualified, the burden shifts to the defendant to prove either that the accommodation is unreasonable or that it creates an undue hardship for the defendant." Walton, 168 F.3d at 670 (citing Borkowski, 63 F.3d at 136-37). Though issues of material fact remain as to whether the Plaintiff's request for medical leave was reasonable, whether a reasonable accommodation existed, and whether the Plaintiff was not provided a reasonable accommodation that would have allowed him to perform his duties, the Defendant has also failed to propose that it would have faced an undue hardship by providing such an accommodation.

37-2 at 15). In contrast, though the Plaintiff agrees that Barr-Nunn entered a "voluntary resignation" for Plaintiff, he argues that this was not truly voluntary and was instead a termination in the guise of choice. When it comes to such employment decisions, resignations are presumed to be voluntary until the employee "presents evidence to establish that the resignation or retirement was involuntarily procured." Leheny v. City of Pittsburgh, 183 F.3d 220, 227 (3d Cir. 1999). From the Court's perspective, it is substantial question of material fact whether the "voluntary resignation" entered for the plaintiff was in fact "voluntary."

Neither the Plaintiff nor the Defendant, however, have provided clear factual evidence sufficient for this Court to determine whether the Plaintiff's "voluntary resignation" was in fact a termination. Though his absence may have been caused by a medical issue likely linked to a disability, it will be left to a jury to determine whether the Plaintiff's availability should be construed as an unavoidable medical necessity or a decision made by the Plaintiff not to return to work. *See* (Doc. 38-1 at ¶ 27) (Plaintiff informed that he must be "ready to work" on his scheduled return date of October 1, 2019, or the Plaintiff would be deemed to have voluntarily resigned); *see also* (Doc. 38-14) (on October 1, 2019, Plaintiff "started [his] truck and accepted [his] load and went back to [his] brothers and passed out"). The Court will therefore deny the parties' separate requests for summary judgment.[6]

---

[6] Whether the Plaintiff suffered an adverse employment action is also an element for a *prima facie* claim for retaliation. *See* (Doc. 37-2 at 14-15)

C. Engagement in an Interactive Process

Though it is not a requirement for a plaintiff's *prima facie* case under the ADA, the Plaintiff separately argues that the Defendant violated the ADA when it "failed entirely to engage in [an] interactive process" meant to ensure the Plaintiff received a reasonable accommodation where available. *See* (Doc. 38 at 14-16). Under the ADA, "[o]nce an employee requests a reasonable accommodation, her employer must assist the employee in seeking accommodations through a 'flexible, interactive process.'" Petti v. Ocean Cty. Bd. of Health, 831 F.App'x. 59, 63 (3d Cir. 2020) (citing Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 186 (3d Cir. 2009)). To establish that an employer failed to participate in the interactive process, a disabled employee must demonstrate: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Taylor, 184 F.3d at 319-20 (citing Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997)) (citations omitted).

It has been settled that whether an employer has discharged its duty to engage in the interactive process is often a matter of "timing" as "the

_____

(citing Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004)). As this element remains unsettled, the Court will likewise deny the Defendant's motion as to the Plaintiff's retaliation claim.

employer will almost always have to participate in the interactive process to some extent before it will be clear that it is impossible to find an accommodation that would allow the employee to perform the essential functions of a job." Taylor, 184 F.3d at 317. The form such a process must take will be established on a case-by-case basis. Conneen v. MBNA America Bank, N.A., 334 F.3d 318, 332 (3d Cir. 2003) ("[t]he law does not require any formal mechanism or 'magic words,'" but will "require '[t]he employer ... to meet the employee half-way'" (citations omitted)).

The Defendant concedes, for purposes of the Plaintiff's motion for summary judgement, that it knew of the Plaintiff's disabilities and the Plaintiff requested an accommodation. *See* (Doc. 37-2 at 13). If an interactive process was thus required, it must thereafter be determined whether a reasonable accommodation was actually available and whether the Defendant failed to engage in sufficient process irrespective of the ongoing discussions between the parties leading up to the entering of the Plaintiff's "voluntary resignation". *See* Williams, 380 F.3d at 772 (in relation to a failure to engage in an interactive process, a plaintiff "cannot recover without showing that a reasonable accommodation was possible" (superseded on other grounds)). The interactive process, however, is not without limits, as employers who make good faith efforts to accommodate an employee are not required to engage in employment practices that are detrimental to the employer's business. *See* Mengine, 114 F.3d at 420 ("[t]he ADA, as far as we are aware, is not intended to punish employers for behaving callously if,

in fact, no accommodation for the employee's disability could reasonably have been made").

The Plaintiff argues that the only accommodation he required was two days of medical leave, and that "[i]t is undisputed that this was not provided or offered to him" by the Defendant after his efforts to maintain contact. (Doc. 44 at 6). In addition, it must be noted that the Plaintiff did inform the Defendant that he would be unable to return to work after he was hospitalized, which in itself reflects a need for further medical leave. In comparison, however, it may be argued that the Defendant retained open lines of communication with the Plaintiff in the week leading up to the Plaintiff's "voluntary resignation" and acted in good faith to provide medical leave until the point where a reasonable accommodation was no longer available. Furthermore, a reasonable factfinder may find that the Plaintiff failed to provide sufficient information to ensure the interactive process remained viable. Colwell, 602 F.3d at 495. The Court will therefore deny the Plaintiff motions for summary judgment alleging a failure to engage in the interactive process in good faith.

## IV.    CONCLUSION

For the reasons discussed above, the Court will **DENY** the Defendant's motions for summary judgment as to Plaintiff's claims under the Americans with Disabilities Act and Pennsylvania Human Relations Act. The Court will likewise **DENY** the Plaintiff's motion for partial summary judgment as to the

Plaintiff's claims under the ADA for failure to accommodate. A separate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: December 23, 2021**
19-2195-01.wpd